Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

No. 04-10-00164-CR

## EX PARTE BERNADETTE PERUSQUIA

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2009-CRN-882-D1-A
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  November 24, 2010

AFFIRMED

In this interlocutory appeal, Bernadette Perusquia contends the trial court erred in denying her pre-trial application for habeas corpus relief because her retrial for murder is barred by double jeopardy. Specifically, Perusquia argues the trial court that presided over her trial abused its discretion by prematurely declaring a mistrial during the jury's deliberations, over her objection and without manifest necessity; therefore, a retrial is barred by double jeopardy. Based on the record before us, we are unable to say the trial court abused its discretion. Accordingly, we affirm the denial of the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Bernadette Perusquia was indicted for the murder of her husband, Juan Perusquia, in Cause No. 2003-CRN-651-D1. She claimed self defense, asserting that during the course of their marriage, her husband had routinely beaten and raped her two to three times per week. On May 14, 2003, Bernadette told Juan that she was going to leave him and they had a confrontation in their home during which Juan physically assaulted Bernadette. When Bernadette tried to leave the house with her young child, Juan attempted to stop her and she fired one shot with a handgun from a distance of two to five feet as Juan approached. Juan's cause of death was a single gunshot wound to the abdomen.

A one-week jury trial commenced on Monday, September 18, 2006, during which the jury considered thirty-four exhibits and heard three days of testimony consisting of eleven State's witnesses, including a firearms expert and medical examiner, plus five defense witnesses, including Bernadette and a clinical psychologist who testified about battered women's syndrome and post-traumatic stress disorder. The jury charge contained an instruction on self defense, and included the corollary issues of duty to retreat, degree of force necessary, real and apparent danger, and provoking the difficulty. The jury heard closing arguments on Friday morning, and began deliberating at approximately 10:00 a.m. on Friday. During the course of the day, the jury sent out three notes containing questions about the evidence and the charge. At 5:55 p.m., the jury sent out Note #4, which stated, "We are at a standstill and have not been able to reach a decision, What is our next step," with a note in parenthesis stating that, "We have taken four votes." In conferring with counsel, the trial court listed the options as simply instructing the jury to continue deliberating as requested by the defense, declaring a mistrial, or giving an *Allen*

charge.[1]  The defense objected that an *Allen* charge was unduly coercive and premature because the issues in the case were complex, and the jury had only deliberated for eight hours and had not stated it was "deadlocked."  The defense objections were based on due process and due course of law.  The State stated it had no objection to the *Allen* charge.  The trial court expressed its concern that the jury's use of the term "standstill" meant they were deadlocked, "[j]ust no longer deliberating, no longer talking, no longer willing to consider changing their minds."  The court reasoned that the jury needed to understand there was a remedy if they were hopelessly deadlocked and rejected the idea of sequestering them.  Expressing its uncertainty as to how to proceed, the court overruled the defense objection and delivered the *Allen* charge.[2]  The court also commented, "And I'll tell you now if either sides [sic] asks for a mistrial I would be inclined to grant it at this point."  Both sides responded they were not asking for a mistrial.  The court then sent the *Allen* charge in to the jury at 6:04 p.m.

At 8:30 p.m., the trial court *sua sponte* told the parties on the record,

> I believe the time has come to quiz the jury to see whether they can continue to deliberate or whether they have become hopelessly deadlocked.  It's now been since 10:00 this morning that they have been deliberating.  On a three-day trial with the instructions that I gave them I think that they have had enough time if they were going to reach a verdict.  I don't want to declare a mistrial unless they tell me that they have become hopelessly deadlocked but because of the instructions that I gave them under the Allen Charge I also do not want to keep them there indefinitely.

---

[1]  *See Allen v. United States*, 164 U.S. 492 (1896).

[2]  The *Allen* charge instructed the jury, "If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the court to declare a mistrial and discharge the jury.  The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time.  Any such future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence which has been presented to this jury.  The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.  With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience.  Don't do violence to your conscience, but continue deliberating."

A defense objection was overruled; the State had no objection. The court brought the entire jury into open court and inquired of the foreperson whether the jury wanted to continue to deliberate. The foreperson replied, "We were in the process of doing so. And I know that we have continued to discuss this. So I don't know which way . . . ." The court interrupted, stating it was not asking where the jury stood. The court explained, "I know it's been a long day for you but under the law once that I give you the instructions you cannot separate. And so I know you must be tired but if you feel that you can continue to deliberate then I, of course, would ask you to continue to deliberate without doing violence to your conscience." The court then repeated its question asking whether the jury is able to continue to deliberate, to which the foreperson responded, "Yes," and "We were in the process of doing so." The court excused the jury to continue its deliberations.

Approximately one hour later, at 9:20 p.m., the jury sent out Note #5 stating, "We are not able to reach a unanimous decision at this time." The defense requested the jury be instructed to continue deliberating. When asked what the State's wishes were, the prosecutor replied, "I don't know, Judge." The court stated, "Well, they've been at it since 10:00 this morning. It's approximately, 9:25 – or 9:20. That's eleven hours and a fraction . . . I had previously given them the Allen Charge. I had asked them if they were willing to continue to deliberate a short while ago and they said, yes. And now they have delivered this to me. I think there is a manifest necessity for me to declare a mistrial." The defense objected on due process and due course of law grounds, requesting that the jury continue deliberating. The court brought the jury into court, and confirmed that the note meant they were "deadlocked and cannot reach a decision" before declaring a mistrial and releasing the jury.

On July 28, 2009, the State re-indicted Bernadette Perusquia for her husband's murder under Cause No. 2009-CRN-882-D1. She filed a pre-trial application for writ of habeas corpus alleging that her retrial is barred by double jeopardy. At a writ hearing held October 5, 2009, defense counsel presented Perusquia's arguments to the trial court; the current presiding judge in that court did not conduct the first trial. After the State filed a written response, another hearing was held on January 7, 2010, during which additional arguments were presented by both sides. The trial court subsequently denied habeas relief, but entered no written findings of fact or conclusions of law. Perusquia now appeals the denial of habeas corpus relief.

### DOUBLE JEOPARDY

On appeal, Perusquia argues that the trial court erred in denying her petition for a writ of habeas corpus to prohibit a second murder trial based on double jeopardy. Specifically, Perusquia asserts she may not be re-tried for the murder of her husband because, after jeopardy attached in her first trial, the trial court abused its discretion by prematurely declaring a mistrial, over defense objection and without manifest necessity, when the jury was unable to reach a unanimous decision on Friday evening. Perusquia contends the trial court denied her a full and fair opportunity to receive a verdict from the jury who heard the evidence in her criminal trial in violation of her constitutional rights to due process and due course of law. U.S. CONST. amends. V, XIV; TEX. CONST. art. I, §§ 14, 19.

***Standard of Review.*** In reviewing a trial court's denial of a pre-trial petition for habeas corpus, we must defer to the court's assessment of the facts. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). We view the facts in the light most favorable to the court's ruling and will uphold it absent an abuse of discretion. *Id.* We afford almost total deference to the trial court's determination of historical facts that are supported by the record, and to mixed questions

of law and fact, when the resolution of those questions turn on evaluations of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007). If the resolution of the ultimate question turns on an application of the law, we review the determination de novo. *Id.* Reviewing courts must also grant deference to implicit fact findings that support the trial court's ultimate ruling. *Id.*; *Wheeler*, 203 S.W.3d at 324 n.23.

*Analysis.* A defendant may not be twice put in jeopardy for the same offense. U.S. CONST. amend. V; TEX. CONST. art. I, § 14; *Arizona v. Washington*, 434 U.S. 497, 503 (1978). Jeopardy attaches when a jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 35 (1978); *Ex parte Little*, 887 S.W.2d 62, 64 (Tex. Crim. App. 1994). When a jury in Texas is unable to agree on a verdict, it may be discharged by agreement of the parties, or in the court's discretion when the jury "has been kept together for such time as to render it altogether improbable that it can agree." TEX. CODE CRIM. PROC. ANN. art. 36.31 (West 2006). When a mistrial is declared over a defendant's objection because the jury is unable to reach a verdict, retrial is barred by double jeopardy unless there was manifest necessity for the mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982); *Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995). "Manifest necessity exists when the circumstances render it impossible to arrive at a fair verdict, when it is impossible to continue with trial, or when the verdict would be automatically reversed on appeal because of trial error." *Hill v. State*, 90 S.W.3d 308, 313 (2002) (citing *Brown*, 907 S.W.2d at 839). A trial court's discretion to grant a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances." *Id.* The trial judge is required to consider and rule out the "less drastic alternatives" before granting a mistrial. *Id.*; *Brown*, 907 S.W.2d at 839. When the trial court grants a mistrial over defense objection despite the availability of a less

drastic alternative, there is no manifest necessity and it constitutes an abuse of discretion. *Brown*, 907 S.W.2d at 839; *Husain v. State*, 161 S.W.3d 642, 645 (Tex. App.—San Antonio 2005, pet. ref'd).

In evaluating the court's exercise of its discretion to declare a mistrial over objection, we consider the length of time the jury deliberated in light of the nature of the case and the evidence presented.[3] *Husain*, 161 S.W.3d at 645 (citing *Patterson v. State*, 598 S.W.2d 265, 268 (Tex. Crim. App. 1980)); *Montemayor v. State*, 55 S.W.3d 78, 87 (Tex. App.—Austin 2001, pet. ref'd). Specifically, we consider "the type and complexity of the evidence, whether expert testimony is involved, the number of witnesses, the number of exhibits . . ., the complexity of the charge, whether the jury moved towards agreement during the period of deliberation, and the nature and extent of communication from the jury." *Torres v. State*, 961 S.W.2d 391, 393 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (quoting *Galvan v. State*, 869 S.W.2d 526, 528 (Tex. App.—Corpus Christi 1993, pet. ref'd)). The trial court's communications with the jury are also significant in evaluating the court's exercise of discretion. *Husain*, 161 S.W.3d at 645.

Here, it took three days to present the trial evidence, consisting of sixteen witnesses, of which three were experts, and thirty-four exhibits. The jury's first notice to the court that they were "at a standstill" was received at approximately 6:00 p.m. on Friday evening, after eight hours of deliberations that day. When a jury advises the court that it is "at a standstill," or is "deadlocked," an instruction to simply continue deliberating is one available, less drastic alternative to declaring a mistrial. *See Husain*, 161 S.W.3d at 647. The use of a "dynamite"

---

[3] In a line of older cases, the court weighed the time consumed by the trial against the time the jury deliberated prior to their discharge, and determined that, in view of the evidence, deliberations that lasted three times as long as presentation of the evidence were sufficient to support the court's decision to discharge the jury upon their notice of deadlock. *See Satterwhite v. State*, 505 S.W.2d 870, 872 (Tex. Crim. App. 1974); *see also Willis v. State*, 518 S.W.2d 247, 248-49 (Tex. Crim. App. 1975); *see also Brown v. State*, 508 S.W.2d 91, 93 (Tex. Crim. App. 1974), *abrogated on other grounds by Payton v. State*, 572 S.W.2d 677 (Tex. Crim. App. 1978).

charge, or *Allen* charge, is another alternative that is less drastic than declaring a mistrial, but stronger than merely instructing the jury to continue deliberating. *See id.* at 646 n.3 (explaining that an *Allen* charge is "a supplemental charge given to a deadlocked jury that directs the jurors to examine the submitted questions with candor and decide the case if the jurors can conscientiously do so"). Here, upon the first notice the jury was "at a standstill," the trial court immediately chose the more drastic measure of giving an *Allen* charge. After about 2½ more hours of deliberations, the trial court interrupted the jury's deliberations to inquire whether they would like to continue deliberating in an effort to reach a unanimous verdict.[4] Finally, after approximately one more hour of deliberations, at 9:20 p.m., the jury sent out a note stating they were "not able to reach a unanimous decision at this time." In response to the note, at 9:30 p.m. the trial court called the jury in to the courtroom. The court asked the foreperson whether the note meant the jury was "deadlocked" and "cannot reach a decision," to which the foreperson replied, "yes." The court then made a finding of manifest necessity and declared a mistrial over Perusquia's objection.

Perusquia asserts the cumulative effect of the trial court's interactions with the jury during its deliberations shows the court was predisposed to end the trial on Friday and rushed into a finding of manifest necessity. Based on the record, we cannot agree. Perusquia points to the court's comment early in the week that it had another trial scheduled to begin on Monday; however, that isolated comment was not repeated, and there is no indication on the record that it was a factor in the court's decision to declare a mistrial on Friday evening. Perusquia contends the court should have allowed the jury more time to deliberate after the 9:20 p.m. note indicating

---

[4] Perusquia asserts this *sua sponte* communication by the court with the jury violated article 36.27 of the Code of Criminal Procedure which requires all communications with the jury to be in writing, and that the parties have an opportunity to object. *See* TEX. CODE CRIM. PROC. ANN. art. 36.27 (West 2006). In view of the procedural posture of this interlocutory appeal, we need not address the merits of that issue.

they were deadlocked, and should have considered sequestration of the jury. Although the court did not expressly state on the record that it had considered sequestration as a less drastic alternative to mistrial, the court was clearly aware of the option of sequestration as evidenced by its earlier comments on the record. Upon receiving the 6:00 p.m. note indicating the jury was "at a standstill," and while considering whether to give the *Allen* charge at that time, the court stated that its interpretation of the note was that the jury was "no longer deliberating, no longer talking, no longer willing to consider changing their minds." The court added, "I know the stakes are very high . . . in this case. But to sequester a jury on a late Friday afternoon after they've worked so hard all week, to force them to deliberate after they've been there eight hours on a three day trial raises my concern whether by telling them to just simply continue to deliberate whether they understand that at some point there is a remedy. That they could tell me we're hopelessly deadlocked . . . . " While the record does not affirmatively state the trial court considered the less drastic alternative of sequestration at the time of the 9:20 p.m. note, the court's earlier reference to the possibility of sequestration shows it considered it as an available alternative, and implicitly ruled it out. *See Brown*, 907 S.W.2d at 840 (recognizing trial court may implicitly rule out a less drastic alternative before finding manifest necessity for a mistrial).

In addition, the record in this case does affirmatively show the trial court considered and employed the following less drastic alternatives before declaring a mistrial by: (1) giving the jury an *Allen* charge in response to their 6:00 p.m. note stating they were "at a standstill" after eight hours of deliberations; (2) allowing the jury more time (almost 3½ more hours) to deliberate after the *Allen* charge; and (3) upon receiving the 9:20 p.m. note stating the jury was "not able to reach a unanimous decision at this time," verifying with the jury foreperson that the note meant they were in fact "deadlocked" and could not reach a decision after a total of 11½

hours of deliberations. Although other judges may not have found manifest necessity existed to declare a mistrial under these circumstances, we cannot say the trial court abused its discretion by failing to consider the less drastic alternatives before deciding to declare a mistrial. *Brown*, 907 S.W.2d at 839; *Husain*, 161 S.W.3d at 645. Considering the nature of the case and the three days' of evidence presented, along with the jury's deliberation time of 11½ hours and the nature of the communications between the court and the jury, we hold the trial court did not abuse its discretion in finding manifest necessity to declare a mistrial over defense objection. Accordingly, viewing the record in the light most favorable to the writ court's ruling, we affirm the denial of Perusquia's request for habeas corpus relief.

Phylis J. Speedlin, Justice

PUBLISH