

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00872-CR

The **STATE** of Texas,
Appellant

v.

Wilter Olivia **GOMEZ**,
Appellee

From the County Court, Kinney County, Texas
Trial Court No. 12051CR
Honorable Dennis Powell, Judge Presiding

Opinion by:  Liza A. Rodriguez, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 15, 2023

AFFIRMED

The State appeals the trial court's order granting Wilter Olivia Gomez's requested habeas relief and dismissing his criminal case with prejudice. We affirm.

### BACKGROUND

On March 6, 2021, Governor Greg Abbott directed the Texas Department of Public Safety ("DPS") to initiate Operation Lone Star ("OLS") and "devote additional law enforcement resources toward deterring illegal border crossing and protecting [] border communities." He further directed "DPS to use available resources to enforce all applicable federal and state laws to

prevent criminal activity along the border, including criminal trespassing, smuggling, and human trafficking, and to assist Texas counties in their efforts to address those criminal activities." As part of OLS, Gomez, a noncitizen, was arrested for criminal trespass in Kinney County; he filed an application for writ of habeas corpus seeking dismissal of the criminal charge, arguing his rights had been violated under the Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3(a). Specifically, Gomez argued the State's selective prosecution of men, and not similarly situated women, for criminal trespass as part of OLS violated his constitutional rights. The trial court granted the writ and set the matter for an evidentiary hearing.

At the hearing, Claudia Molina with the Laredo Private Defenders Office ("LPDO") testified about OLS and the process through which individuals arrested and charged are appointed counsel. She testified that LPDO was awarded a grant allowing it "to become the indigent defense hub for individuals arrested under Operation Lone Star." Molina, an assignment supervisor, oversees "all things related to the assignments process including the appointment of counsel, communication with the court and [the appointed] attorneys." She testified that pursuant to OLS, if a defendant is arrested in Val Verde, Kinney, Maverick or Uvalde counties, he is taken to the Val Verde Temporary Processing Center, but if a defendant is arrested in Jim Hogg, Webb, or Zapata counties, he is taken to the Jim Hogg Temporary Processing Center. LPDO is then notified within twenty-four hours of the defendant being magistrated and assigns appointed counsel. Molina testified that as part of her job, she reviews probable cause statements, which are forwarded to LPDO after the defendant is magistrated. Molina testified the primary charges in OLS cases are criminal trespass and smuggling of persons. Molina was asked to prepare a report of all OLS cases in which LPDO had appointed counsel from August 2021 (when LPDO began appointing counsel for OLS cases) to the end of October 2022. Molina testified that LPDO had appointed counsel in

7,750 total OLS cases. Of those 7,750 cases, 5,700 cases involved individuals charged with criminal trespass. With regard to Kinney County specifically, Molina testified that 4,800 cases arose out of Kinney County, and 3,700 were related to individuals charged with criminal trespass. Molina was then asked whether LPDO had appointed counsel to any women arrested for criminal trespass in Kinney County before October 31, 2022. Molina testified that as of October 31, 2022, no women had been arrested for criminal trespass and appointed counsel. According to Molina, in her review of probable cause statements, the women detained are not arrested for criminal trespass, but are instead referred to border patrol.

On October 15, 2021, Gomez was arrested for criminal trespass of a critical infrastructure facility (a railroad) in an area subject to a declaration of a state disaster made by the governor under section 418.014 of the Texas Government Code. During her testimony, Molina was asked whether, during the week of Gomez's arrest, LPDO had appointed any counsel for women charged with criminal trespass. She replied no such women had been appointed counsel. According to Molina, out of 7,000 people LPDO has appointed counsel since OLS began, only four women have been magistrated for criminal trespass and appointed counsel, and those appointments occurred on November 8, 2022.

Omar Saucedo, a social worker with Neighborhood Defender Service Texas ("Neighborhood Defender"), oversees a group of client advocates who regularly visit clients arrested under OLS. He explained that Neighborhood Defender is assigned to clients by LPDO. Since OLS began, Neighborhood Defender has been assigned 900 cases. Saucedo testified that none of those 900 clients were women.

Captain Joel Betancourt, the captain of DPS's south Texas region, testified as to his role in coordinating with local officials to plan how to implement and execute OLS. He explained that individuals arrested in Kinney County are sent to the Val Verde Temporary Processing Center

where they are magistrated. According to Captain Betancourt, the Val Verde Temporary Processing Center and the Jim Hogg Temporary Processing Center had to be retrofitted to meet the criteria of a county jail, including adding air conditioning to the facilities.

Captain Betancourt testified that as part of his role in OLS, he met with county prosecutors involved with OLS, including those in Kinney County. He helped define the arrest criteria for OLS. He further testified that he sent an email on August 12, 2021. Captain Betancourt explained that men and women are sometimes detained together on private property, and the email provided examples of how to handle certain types of groups, including mixed-sex groups. The email, which was admitted in evidence without objection, states the following:

> We will continue to arrest those immigrants who are trespassing on ***private*** property (Only in Val Verde and Kinney County) where the landowner has either agreed to file a complaint or agreed to have us sign them on their behalf. The criteria has been expanded to include the ***majority*** of ***single adult males***. While it would be difficult to cover every single scenario, below are some examples:
>
> Father, Mother, and Child under ***18*** – Family Unit. Release to BP.
>
> Father, Mother, and Child over 18 ***and*** are trespassing-Male father will be arrested. Mom and adult child will be released to BP.
>
> Uncle and ***adult*** nephew and are criminal trespassing – Arrest both.
>
> Uncle and child nephew – Family Unit, refer to BP.
>
> ***The basic common denominators are:***
>
> If there is a child who is part of a family[,] [w]e will refer to BP.
>
> If the family consists of male adults (18 and over)[,] we will arrest, ***if they are trespassing***.
>
> Please let me know if you have any questions.
>
> Joel A. Betancourt
> Captain
> South Texas Region – Del Rio.

(emphasis in original). Captain Betancourt testified that he expected every DPS trooper making criminal trespass arrests to be aware of his guidance.

Captain Betancourt further explained that when women are found on private property allegedly committing criminal trespass, DPS officers never call local facilities to check for capacity. Women are "always sent to immigration" because there was no "place to put them" as the local county jails have no capacity. Captain Betancourt was asked whether there were sufficient facilities to hold men charged with criminal trespass when OLS was first initiated. Captain Betancourt testified there were not sufficient facilities. He admitted that the State had to fund the modification of facilities to hold the men who were being arrested for criminal trespass pursuant to OLS. Captain Betancourt was asked, "In all fairness, this is a multi-billion-dollar operation?" He replied, "Yes, sir." He was then asked, "And so it's just a matter of money, but certainly the State could build a facility or convert a facility to put women in; isn't that right?" Captain Betancourt replied, "Yes, sir." Captain Betancourt testified the Val Verde facility was built to hold men arrested pursuant to OLS because, otherwise, the local jail in Kinney County would have been overwhelmed. He testified that jail standards require men and women to be housed separately and that he had informed prosecutors there were not facilities to hold women arrested for criminal trespass pursuant to OLS. He admitted that women would be arrested for criminal trespass pursuant to OLS if the State built another holding facility for women.

Trooper Osvaldo Guajardo testified that in criminal trespass arrests he has made under OLS, if there were mixed gender groups, men were arrested and women were released to border patrol. He testified that he had orders that when making a criminal trespass arrest pursuant to OLS, "if there's a female or if there's a family, refer them to Border Patrol." When asked where those orders came from, Trooper Guajardo replied, "Probably in an email or word of mouth from our sergeants. Somewhere in the chain of command."

In addition to the above testimony, several exhibits were admitted in evidence, including Governor Abbott's Proclamation of May 31, 2021. At the end of the hearing, the trial court set deadlines by which the State and Gomez could file supplemental briefing. On December 20, 2022, the trial court granted Gomez's requested relief, finding that Gomez had presented a prima facie selective prosecution claim on the basis of equal protection:

> Specifically, the Court finds Applicant [Gomez] is a man, and the evidence proves purposeful discrimination in this case. The Applicant was arrested and charged, but would not have been arrested if he were a woman; hence, he was treated differently from similarly situated women, based on sex. Hence, the Applicant is the target of selective enforcement based on the constitutionally protected class of sex, in violation of equal protection [as] guaranteed by the U.S. Constitution and the Texas Constitution. Accordingly, the defendant [Gomez] made a prima facie case of sex discrimination. The policy of Operation Lone Star, as it now stands, has a discriminatory effect and is motivated by a discriminatory purpose.

The trial court then found the State had not met its burden of justifying the discriminatory treatment:

> The State, in turn, failed to prove an adequate justification for the discrimination. There was no evidence that the discrimination based on sex served an important governmental objective, and naturally therefore, no evidence to establish that the discrimination was substantially related to achievement of important governmental objectives. Furthermore, the State failed to prove that the State has a compelling interest and there is no other manner to protect that compelling interest without systematically arresting only men for criminal trespass and releasing all women. The Court does not find the criminal trespass statute to be unconstitutional, but finds the application of that law under Operation Lone Star renders the prosecution under that statute to be unconstitutional as applied to this individual.

> The Court does not find unconstitutional enforcement at the level of the local prosecutor's office. Prosecution of women is not being summarily declined by the County Attorney's office, but that office is limited to decisions of whether or not to prosecute the cases which the office receives, which are only cases involving accused males. Under the current system, the unconstitutional prosecution is fully implemented at the level of arrest of only male suspects.

> However, ostensibly Kinney County could have eradicated the discriminatory intent of Operation Lone State by pulling out the county checkbook, and bearing the financial burden of arresting, housing, and prosecuting women, as the County surely does for other crimes. The State failed to produce evidence about the feasibility, or lack of feasibility, of that alternative. If the County had done so there

is no reason to think the arresting officers could have been instructed to not only arrest men, but to also arrest women, when the probable cause existed to do so. But that has not happened.

The trial court "order[ed] the criminal prosecution against Applicant be dismissed with prejudice." The State appealed.

## DISCUSSION

In its brief, the State argues the trial court erred in granting relief on Gomez's selective prosecution equal protection claim for the following three reasons: (1) Gomez's pretrial habeas claim is not cognizable; (2) Gomez did not present a prima facie case of selective prosecution on the basis of violation of his equal protection rights; and (3) the State met its burden of showing its policy passes "the strictest of scrutiny."

### A. Standard of Review

In reviewing a trial court's decision to grant or deny habeas corpus relief, we defer to the trial court's assessment of the facts when those facts turn on an evaluation of credibility and demeanor. *Ex parte Perusquia*, 336 S.W.3d 270, 274-75 (Tex. App.—San Antonio 2010, pet. ref'd); *Ex parte Quintana*, 346 S.W.3d 681, 684 (Tex. App.—El Paso 2009, pet. ref'd). Thus, we view the facts in the light most favorable to the court's ruling and will uphold it absent an abuse of discretion. *Perusquia*, 336 S.W.3d at 274-75; *Quintana*, 346 S.W.3d at 684. "We afford almost total deference to the trial court's determination of historical facts that are supported by the record, and to mixed questions of law and fact, when the resolution of those questions, turn[s] on evaluations of credibility and demeanor." *Perusquia*, 336 S.W.3d at 275. "If the resolution of the ultimate question turns on an application of the law, we review the determination de novo." *Id.*

### B. Cognizability of a Pretrial Selective Prosecution Equal Protection Habeas Claim on the Basis of Gender Discrimination

The State first argues that Gomez's pretrial selective prosecution claim is not cognizable. Recently, in *Ex parte Aparicio*, 672 S.W.3d 696, 713 (Tex. App.—San Antonio 2023, pet. granted), we considered this issue and concluded a "selective-prosecution claim on the basis of equal protection is the type of claim 'in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" *Id.* at 709 (quoting *Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017)). Accordingly, we held the claim was cognizable in a pretrial habeas proceeding. *Id.* Thus, for the same reasons explained in *Aparicio*, 672 S.W.3d at 707-13, we hold Gomez's pretrial habeas claim is cognizable.

### C. Gomez's Prima Facie Claim

The State further argues that Gomez failed to establish a prima facie case of selective prosecution equal protection. To establish a prima facie case of selective prosecution, Gomez must show the "prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To establish a discriminatory effect in a selective prosecution case based on gender discrimination, Gomez had to show similarly situated individuals of the opposite sex were not prosecuted for the same conduct. *See id.* (stating standard with respect to race discrimination); *Robles v. State*, 585 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (applying *Armstrong* standard to gender discrimination). To demonstrate that the prosecution was motivated by a discriminatory purpose, Gomez had to show that the State's selection of him for prosecution was based on an impermissible consideration like gender. *See Wayte*, 470 U.S. at 610; *Lovill v. State*, 287 S.W.3d 65, 79 (Tex. App.—Corpus Christi-Edinburg 2008), *rev'd on other grounds*, 319 S.W.3d 687 (Tex. Crim. App. 2009).

In *Aparicio*, 672 S.W.3d at 715, we also considered whether a noncitizen who had been charged with trespass under OLS had met his burden of stating a prima facie case for selective prosecution on the basis of gender discrimination. After reviewing the evidence presented at the habeas hearing, we held the applicant had met his burden of showing discriminatory effect and discriminatory purpose, and thus had stated a prima facie claim for selective prosecution on the basis of gender discrimination. *See id*. Here, the evidence presented at Gomez's habeas hearing is similar to the evidence presented in *Aparicio*. *See id*. at 701-06. Additionally, the arguments made by the State in its brief are the same arguments it presented in *Aparicio*. *See id*. at 713-15. Therefore, for the same reasons enunciated in *Aparicio*, we conclude Gomez met his burden of showing a prima facie case for selective prosecution on the basis of gender discrimination. *See id*.; *see also State v. Del Campo-Chavez*, No. 04-22-00737-CR, 2023 WL 4916433, at *2 (Tex. App.— San Antonio Aug. 2, 2023, pet. filed (relying on *Aparicio* and affirming the trial court's granting of habeas relief on applicant's selective prosecution claim brought on the basis of equal protection).

*D. State's Burden*

Because Gomez met his burden of showing a prima facie case for selective prosecution on the basis of gender discrimination, the burden shifted to the State to justify the discriminatory treatment. *See Aparicio*, 672 S.W.3d at 715. With regard to Gomez's state claim, the Texas Constitution's Equal Rights Amendment was "designed expressly to provide protection which supplements the federal guarantees of equal treatment" and specifies "sex, race, color, creed, or national origin" as protected classes. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 257 (Tex. 2002). Accordingly, it "grants additional protection against gender-based classifications" than those found in the federal Constitution. *Id*. at 262; *see also In re McLean*, 725 S.W.2d 696, 698 (Tex. 1987) (concluding that "the Equal Rights Amendment is more extensive and provides more

specific protection" than Constitution). "It does so by elevating sex to a suspect class and subjecting sex-based classifications to heightened strict-scrutiny review." *Bell*, 95 S.W.3d at 257. Thus, under the Texas Equal Rights Amendment, "the State's discriminatory conduct is subject to strict scrutiny." *Aparicio*, 672 S.W.3d at 716. To justify its discriminatory conduct, the State must show that its discriminatory classification "is *narrowly tailored* to serve a compelling governmental interest." *Id*. (quoting *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012) (quoting *Bell*, 95 S.W.3d at 257)) (emphasis added). The Texas Supreme Court has explained that under this standard, "[e]ven the loftiest goal does not justify sex-based discrimination in light of the clear constitutional prohibition." *McLean*, 725 S.W.2d at 698. "Under our model of strict judicial scrutiny, such discrimination is allowed only when the proponent of the discrimination can prove that there is no other manner to protect the state's compelling interest." *Id*.

At the hearing, the State did not call any witnesses or introduce any evidence. In its brief, it argues that the following evidence in the record, which was introduced by Gomez, meets its burden under strict scrutiny: (1) Governor Abbott's Proclamation declaring an emergency regarding border security; and (2) testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees. According to the State, Governor Abbott's Proclamation is evidence to demonstrate the State's compelling interest. It further claims that "OLS is narrowly tailored to address the specific migrant invasion occurring on the southern border," but *does not explain how* OLS is narrowly tailored to serve its compelling interest of border security. The State simply argues that it "does not have sufficient facilities to house all women who are retained." Notably absent from the State's argument is any evidence of the feasibility of the State to, as the trial court stated, "pull[] out the county checkbook" and "bear[] the financial burden of arresting, housing and prosecuting women," as it did by modifying existing facilities to house male detainees. Indeed, Captain Betancourt admitted at the hearing that OLS

was a multi-billion-dollar operation and that it is merely a matter of allocating funds for the State to build a facility or convert an existing facility to hold women. In viewing this record in the light most favorable to the trial court's ruling, we find no abuse of discretion by the trial court in concluding the State failed in its burden of justifying its discriminatory conduct under strict scrutiny, as required by Texas's Equal Rights Amendment. *See McLean*, 725 S.W.2d at 698 (explaining that to meet its burden under strict scrutiny, the state must show that "there is no other manner to protect the state's compelling interest" other than to discriminate against men).

With regard to Gomez's federal equal protection claim, "the State's discriminatory conduct is subject to intermediate scrutiny." *Aparicio*, 672 S.W.3d at 715 (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Casarez v. State*, 913 S.W.2d 468, 493 (Tex. Crim. App. 1995) (op. on reh'g)). To satisfy intermediate scrutiny, the government must show "that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980)). That is, the state must provide an "exceedingly persuasive justification" for its classification. *United States v. Virginia*, 518 U.S. 515, 533 (1996). "The burden of justification is demanding and it rests entirely on the State." *Id*. This test requires a "genuine" justification, not one that is "hypothesized or invented *post hoc* in response to litigation." *Id*.

Again, the State points only to the Governor's Proclamation and the lack of pretrial facilities to hold women. The State presents no explanation of how its policy of arresting men for criminal trespass, and not similarly situated women, is substantially related to its important governmental interest of border security. *See Adams v. Sch. Bd. of St. Johns Cty.*, 57 F.4th 791, 801 (11th Cir. 2022) ("For a policy to be substantially related to an important governmental objective, there must be 'enough of a fit between the . . . [policy] and its asserted justification.'"

- 11 -

(quoting *Danskine v. Miami Dade Fire Dep't*, 253 F.3d 1288, 1299 (11th Cir. 2001)) (alteration in original). While the State points to the lack of facilities to hold women pretrial, once again, it has not presented any evidence of why it is not possible to modify and/or build temporary facilities to hold women, as it did for men. We note the same testimony by Captain Betancourt that OLS is a multi-billion-dollar operation and that it is merely a matter of allocating funds to build or modify facilities to hold women. Therefore, viewing the facts in the light most favorable to the trial court's ruling, we find no abuse of discretion by the trial court in determining the State did not meet its burden of justifying its discriminatory treatment under intermediate scrutiny. *See Perusquia*, 336 S.W.3d at 274-75; *Quintana*, 346 S.W.3d at 684.

## CONCLUSION

For the reasons stated above, we hold that Gomez's pretrial habeas claim is cognizable and that he met his burden of showing a prima facie claim for selective prosecution on the basis of gender discrimination. Thus, the burden shifted to the State to justify its discriminatory conduct under both strict and intermediate scrutiny. Viewing the facts in the light most favorable to the trial court's ruling, we find no abuse of discretion by the trial court in determining that the State had not met its burden under either standard. Therefore, we affirm the trial court's order granting Gomez habeas relief and dismissing his criminal case with prejudice.

Liza A. Rodriguez, Justice

PUBLISH