

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00630-CR

**EX PARTE** Juan Esteban **VAZQUEZ-BAUTISTA**

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2022CRB000723L1
Honorable Leticia Martinez, Judge Presiding[1]

**OPINION ON EN BANC RECONSIDERATION**

Opinion by:     Patricia O. Alvarez, Justice

Sitting en banc:  Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: December 6, 2023

REVERSED AND REMANDED

As part of Operation Lone Star, Juan Esteban Vazquez-Bautista, a noncitizen, was arrested for trespassing on private property in Webb County. He filed an application for writ of habeas corpus seeking dismissal of the criminal charge based on a violation of his state and federal rights to equal protection. After holding an evidentiary hearing, the trial court denied his requested relief, and Vazquez appealed. On August 9, 2023, this court issued an opinion and judgment reversing

---

[1]The Honorable Hugo D. Martinez is the judge of the Webb County Court at Law Number One. Associate Judge Leticia Martinez signed the order denying the habeas corpus relief at issue in this appeal.

the trial court's order and remanding this case to the trial court for further proceedings. The State then filed a motion for rehearing, which this court denied on September 12, 2023. On October 10, 2023, within its plenary power and on its own motion, the en banc court voted to reconsider this appeal. *See* TEX. R. APP. P. 19.1(b); 49.5. On reconsideration en banc, we withdraw our previous opinion and judgment, and substitute this opinion and judgment in their place.

## BACKGROUND

Since March 2021, Texas Governor Greg Abbott has directed the Texas Department of Public Safety and the Texas National Guard "to secure the border and stop cartels and criminals from smuggling deadly drugs, weapons, and people into Texas" under Operation Lone Star. The State has charged thousands of OLS cases into various courts in the following counties: Webb, Jim Hogg, Maverick, Zapata, Kinney, and Val Verde. Most of those OLS cases involve arrests for misdemeanor criminal trespass by noncitizens who have crossed the United States border without proper legal status.

Appellant Vazquez was arrested for criminal trespass. *See* TEX. PENAL CODE § 30.05(a). He then filed a pretrial application for writ of habeas corpus, arguing that the State was selectively prosecuting him in violation of the Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3(a).

At Vazquez's habeas corpus hearing, State Trooper Juan Antonio Juarez III testified that on July 26, 2022, he arrested Vazquez with four men and one woman for criminal trespass. The men were transported to the Jim Hogg County Temporary Booking Facility, and the woman was released to the U.S. Border Patrol. Trooper Juarez did not include the name of the woman in his report. According to the record, Vazquez was at first detained and then released on $500 bond.

Trooper Juarez was asked about the typical process when someone is apprehended for a misdemeanor in a case not related to OLS. Trooper Juarez agreed that those people are sometimes

just given a citation to appear in court and sometimes are taken into custody at the local jail. Trooper Juarez also agreed that he had performed these types of arrests and citations for both men and women in cases not related to OLS. However, in OLS cases, he admitted that only men who are arrested for criminal trespass are taken to the temporary detention center and that women are "referred to U.S. Border Patrol."

Also at the hearing, Claudia Molina of the Lubbock Private Defender's Office testified as to the process through which an individual who is arrested for criminal trespass under OLS obtains appointment of counsel. According to Molina's testimony, the Lubbock Private Defender's Office ("LPDO"), in conjunction with OLS, was awarded a grant by the Texas Indigent Defense Commission to appoint counsel to represent individuals who have been brought before a magistrate or are being held at detention facilities. That is, when an individual is arrested and brought before a magistrate, his paperwork is sent to the LPDO, which then reviews the paperwork and determines whether counsel will be appointed in the case. Molina testified that this review and appointment process includes the OLS cases from six counties: Webb, Jim Hogg, Maverick, Zapata, Kinney, and Val Verde. According to Molina, the "primary charges of appointment" for the LPDO as to OLS "are criminal trespass and then smuggling of persons." As part of OLS, LPDO first began appointing counsel in the last week of July 2021.

Molina testified that part of her job is to be a client advocate: she handles client and family communication, watches court dockets, and observes court several times per month. She stated that she has handled at least five hundred client calls and the same amount of family calls, over one hundred client Zoom meetings, and over three hundred court appearances in different counties. She testified that she is unaware of any women who have been prosecuted for misdemeanor trespass as part of OLS.

Molina stated that she also generated a report of OLS cases that were appointed counsel through the LPDO as of two days before Vazquez's hearing. A little over five thousand five hundred of six thousand cases were misdemeanor trespass cases. None of the misdemeanor trespass cases charged women.

As for Webb County specifically, the LPDO had begun defending cases there as of July 25, 2022. In the time before the hearing, the LPDO had been assigned thirty-five cases. Again, no misdemeanor trespass cases charged women.

Molina testified that the only OLS cases charging women were felony human smuggling cases.

After the two witnesses testified, the trial court asked if there were any other witnesses. Vazquez's attorney replied there were no more witnesses but asked to read into the record the stipulation of the parties:

> [T]he State stipulates that women are not prosecuted for trespass as part of Operation Lone Star even when they [are] found trespassing. The defense stipulates that the women require separate housing and staffing from adult male detainees.[2]

Vazquez's attorney then argued that Vazquez had met his burden of proving a prima facie claim of selective prosecution on the basis of sex discrimination. Accordingly, he argued the burden shifted to the State to justify its discriminatory conduct under strict scrutiny. The trial court then requested the State to submit a written brief, explaining that it wanted to give the State an opportunity to respond. The State argued that it did not believe Vazquez had met his burden, but that if he had, the State's conduct was justified. The parties then argued about which type of scrutiny would apply to the review of the State's conduct. The trial court reiterated, "All right.

---

[2]The written notice of stipulation in the clerk's record states: "The State stipulates that women are not prosecuted for trespass as part of Operation Lone Star, even when they are found trespassing. The defense stipulates that women require separate housing and staffing from adult male detainees."

Once again, [Prosecutor], put your argument and submit your brief on Wednesday [August 24, 2022]. [Defense counsel], if you want to submit a response to [the State's brief], I'll give you till Thursday [August 25, 2022]." On August 24, 2022, the State filed a written response, arguing the challenged action serves "important governmental objectives." The State did not attach any additional evidence in support of this assertion. On August 25, 2022, Vazquez filed a reply to the State's response, arguing that the State had failed to justify its discriminatory actions under either strict or intermediate scrutiny and that the remedy is dismissal of the case. On September 23, 2022, the trial court denied Vazquez's requested relief. The trial court did not make specific findings of fact. Vazquez appealed.

## DISCUSSION

On appeal, Vazquez argues the trial court erred in denying his requested relief because (1) he properly raised his equal-protection challenge to his prosecution in a pretrial writ of habeas corpus; (2) he met his burden of proving a prima facie claim of selective prosecution in violation of the Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment; and (3) the State did not meet its burden of justifying its discriminatory conduct under the United States Constitution or the Texas Constitution.

*A. Standard of Review*

In reviewing a trial court's decision to grant or deny habeas corpus relief, we defer to the trial court's assessment of the facts when those facts turn on an evaluation of credibility and demeanor. *Ex parte Perusquia*, 336 S.W.3d 270, 274-75 (Tex. App.—San Antonio 2010, pet. ref'd); *Ex parte Quintana*, 346 S.W.3d 681, 684 (Tex. App.—El Paso 2009, pet. ref'd). Thus, we review the facts in the light most favorable to the court's ruling and will uphold it absent an abuse of discretion. *Perusquia*, 336 S.W.3d at 274-75; *Quintana*, 346 S.W.3d at 684. "We afford almost total deference to the trial court's determination of historical facts that are supported by the record,

and to mixed questions of law and fact, when the resolution of those questions, turn[s] on evaluations of credibility and demeanor." *Perusquia*, 336 S.W.3d at 275. "If the resolution of the ultimate question turns on an application of law, we review the determination de novo." *Id*.

### B. Cognizability of a Pretrial Selective Prosecution Equal Protection Habeas Claim on the Basis of Sex Discrimination

In *Ex parte Aparicio*, 672 S.W.3d 696, 713 (Tex. App.—San Antonio June 21, 2023, pet. granted), we considered whether a pretrial selective prosecution claim on the basis of sex discrimination was cognizable in a pretrial habeas corpus proceeding. We concluded that a "selective-prosecution claim on the basis of equal protection is the type of claim 'in which the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review.'" *Id*. at 709 (quoting *Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017)). Thus, we held the claim was cognizable in a pretrial habeas proceeding. *Id*. For the reasons explained in *Aparicio*, 672 S.W.3d at 707-13, we hold Vazquez's pretrial habeas claim is cognizable.

### C. Prima Facie Claim of Selective Prosecution

We next consider whether Vazquez met his burden of proving a prima facie claim. To establish a prima facie case of selective prosecution, Vazquez must show the "prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)). To establish a discriminatory effect in a selective prosecution case based on gender discrimination, Vazquez had to show similarly situated individuals of the opposite sex were not prosecuted for the same conduct. *See id*. (stating standard with respect to race discrimination); *Robles v. State*, 585 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (applying *Armstrong* standard to gender discrimination). To demonstrate that the prosecution was motivated

by a discriminatory purpose, Vazquez had to show that the State's selection of him for prosecution was based on an impermissible consideration like gender. *See Wayte*, 470 U.S. at 610; *Lovill v. State*, 287 S.W.3d 65, 79 (Tex. App.—Corpus Christi-Edinburg 2008), *rev'd on other grounds*, 319 S.W.3d 687 (Tex. Crim. App. 2009).

In *Aparicio*, 672 S.W.3d at 715, we considered whether a noncitizen who had been charged with trespass under OLS had met his burden of stating a prima facie case for selective prosecution on the basis of gender discrimination. After reviewing the evidence presented at the habeas hearing, we held the applicant had met his burden of showing discriminatory effect and discriminatory purpose, and thus had stated a prima facie claim for selective prosecution on the basis of gender discrimination. *See id*. The evidence presented at Vazquez's habeas hearing is similar to the evidence presented in *Aparicio*. *See id*. at 701-06. Additionally, the arguments made by the State in its brief are the same arguments it presented in *Aparicio*. *See id*. at 713-15. Therefore, for the same reasons enunciated in *Aparicio*, we conclude Vazquez met his burden of proving a prima facie case for selective prosecution on the basis of gender discrimination. *See id*.; *see also State v. Gomez*, No. 04-22-00872-CR, 2023 WL 7552682, at *5 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.) (relying on *Aparicio* and concluding applicant had met his burden of showing a prima facie case for selective prosecution on the basis of gender discrimination).

*D. State's Burden*

In our opinion of August 9, 2023, after determining that Vazquez had met his burden of proving a prima facie case for selective prosecution on the basis of gender discrimination, we followed our disposition in *Aparicio*, reversing the trial court's order and remanding for the State to justify the gender discrimination. *See Ex parte Vazquez-Bautista*, No. 04-22-00630-CR, 2023 WL 5089004, at *2 (Tex. App.—San Antonio Aug. 9, 2023). However, on reconsideration en

banc, we conclude this cause is distinguishable from *Aparicio* because the trial court in *Aparicio* made an explicit finding that Aparicio had not presented a prima facie claim.

In determining the correct disposition in *Aparicio*, we emphasized that the "trial court stated on the record that it had determined Aparicio had not met his prima facie burden." *Aparicio*, 672 S.W.3d at 716. Thus, it was "clear from the record that the trial court never reached the merits of" the third prong in an equal protection analysis: whether the State met its burden of justifying its discriminatory conduct. Because the trial court stated on the record that it was ruling Aparicio had not met his prima facie burden, "the State was not required at the hearing to justify its discriminatory actions." *Id*. We reasoned that because the trial court had "not had an opportunity to determine whether the State's discriminatory classification was justified under intermediate scrutiny (Aparicio's federal claim) and strict scrutiny (Aparicio's state claim)," the cause should be reversed and remanded so that the trial court could determine whether the State had met its burden under the third prong of the equal protection analysis. *Id*.

In contrast, at the end of Vazquez's habeas hearing, the trial court took the matter under advisement and gave the State an opportunity to file a written brief on the issue of whether it met its burden to justify its discriminatory conduct. Thus, unlike in *Aparicio*, the trial court held a full hearing on the equal protection issue and the State had an opportunity to present evidence to meet its burden. Only after the State filed a written response, and Vazquez filed a reply, did the trial court sign an order denying Vazquez's requested relief. Further, it is not clear from the record on which basis the trial court made its ruling; it simply denied Vazquez his requested relief.

As part of our standard of review, when a trial court does not make explicit findings, we must "defer to the trial court's implied factual findings that are supported by the record." *Ex parte Wheeler*, 203 S.W.3d 317, 326 (Tex. Crim. App. 2006). That is, we must "uphold the trial court's judgment as long as it is correct on any theory of law applicable to the case." *Ex parte Evans*, 410

S.W.3d 481, 484 (Tex. App.—Fort Worth 2013, pet. ref'd). Given the trial court's lack of explicit findings and the fact the trial court held a full hearing on the issue, including giving the State an opportunity to file a written response, we conclude that we must reach the third prong of the equal protection analysis: whether the State met its burden of justifying its discriminatory treatment of Vazquez.

As Vazquez met his burden of presenting a prima facie case, the burden shifted to the State to justify the discriminatory treatment. *See Aparicio*, 672 S.W.3d at 715. With regard to Vazquez's state claim, the Texas Constitution's Equal Rights Amendment was "designed expressly to provide protection which supplements the federal guarantees of equal treatment" and specifies "sex, race, color, creed, or national origin" as protected classes. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 257 (Tex. 2002). Accordingly, it "grants additional protection against gender-based classifications" than those found in the United States Constitution. *Id*. at 262; *see also In re McLean*, 725 S.W.2d 696, 698 (Tex. 1987) (concluding that "the Equal Rights Amendment is more extensive and provides more specific protection" than the Constitution). "It does so by elevating sex to a suspect class and subjecting sex-based classifications to heightened strict-scrutiny review." *Bell*, 95 S.W.3d at 257. Thus, under the Texas Equal Rights Amendment, "the State's discriminatory conduct is subject to strict scrutiny.*" Aparicio*, 672 S.W.3d at 716. To justify its discriminatory conduct, the State must show that its discriminatory classification "is *narrowly tailored* to serve a compelling governmental interest." *Id*. (quoting *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012) (quoting *Bell*, 95 S.W.3d at 258)) (emphasis added). The Texas Supreme Court has explained that under this standard, "[e]ven the loftiest goal does not justify sex-based discrimination in light of the clear constitutional prohibition." *McLean*, 725 S.W.2d at 698. "Under our model of strict judicial scrutiny, such discrimination is allowed only when the proponent of

the discrimination can prove that there is no other manner to protect the state's compelling interest." *Id*.

Recently, in *State v. Gomez*, 2023 WL 7552682, at * 5-6, we addressed the issue of whether the State met its burden under strict scrutiny to justify its discriminatory conduct by relying on Governor Abbott's Proclamation and "testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees." In *Gomez*, the State argued the foregoing demonstrated its compelling interest. *Id*. at *5. However, while the State claimed in its brief that "OLS is narrowly tailored to address the specific migrant invasion occurring on the southern border," it did not "*explain how* OLS [was] narrowly tailored to serve its compelling interest of border security." *Id*. (emphasis in original). "The State simply argue[d] that it 'does not have sufficient facilities to house all women who are retained." *Id*. We explained that "[n]otably absent from the State's argument [was] any evidence of the feasibility of the State to, as the trial court stated, 'pull[] out the county checkbook' and 'bear[] the financial burden of arresting, housing and prosecuting women,' as it did by modifying existing facilities to house male detainees." *Id*. We noted that "Captain Betancourt admitted at the habeas hearing that OLS was a multi-billion-dollar operation and that it is merely a matter of allocating funds for the State to build a facility or convert an existing facility to hold women." *Id*. We thus held the trial court had correctly concluded that the State had "failed in its burden of justifying its discriminatory conduct under strict scrutiny, as required by Texas's Equal Rights Amendment." *Id*.

Similarly, at the habeas hearing in this case, the State did not call any witnesses or introduce any evidence. In its brief, the State argues that its actions pass "the strictest of scrutiny" because of "the emergency situation on Texas's southern border." According to the State, the "massive influx of undocumented migrants from all over the world, arriving without any screening involving

their criminal, health, and security risk . . ., creates a real danger to both public health and public safety." The State further argues,

> The massive logistical effort and monetary cost associated with this influx of individuals from other countries necessitates that certain individuals be processed through the federal system and the policies of which [Vazquez] now complains are substantially related to achievement of the legitimate goals of the State of Texas. [Vazquez] offers no real alternatives for the State other than pipe dreams of monstrous logistical feats that completely ignore the immediacy of the declared disaster on the border and the limited nature of fiscal reality.

First, it is not Vazquez's burden to offer "real alternatives." After Vazquez presented a prima facie case of selective prosecution, the burden *shifted to the State* to justify its actions. *See Aparicio*, 672 S.W.3d at 715. Second, the State does not cite any evidence or testimony presented at the habeas hearing, or in its written response requested by the trial court, to support the above assertions. The State merely refers to Governor Abbott's Proclamation declaring an emergency regarding border security. The only other evidence in the record related to this issue is the stipulation made by the parties that "women require separate housing and staffing from adult male detainees." As in *Gomez*, even though given an opportunity, the State failed to present any evidence of the feasibility of the State to bear the financial burden of arresting, housing, and prosecuting women, as it did by modifying its existing facilities to house male detainees. *See Gomez*, 2023 WL 7552682 at *5. There is simply no evidence in this record to support the State's assertion that OLS is "narrowly tailored to serve its compelling interest of border security." *Id*.; *see McLean*, 725 S.W.2d at 698 (explaining that to meet its burden under strict scrutiny, the state must show that "there is no other manner to protect the state's compelling interest" other than to discriminate against men). Thus, even in reviewing the facts in the light most favorable to the trial court's ruling, we hold the trial court abused its discretion in denying Vazquez relief on his selective prosecution claim under the Texas Equal Rights Amendment. *See Perusquia*, 336 S.W.3d at 274-75 (stating appellate standard in reviewing habeas rulings).

With regard to Vazquez's federal equal protection claim, "the State's discriminatory conduct is subject to intermediate scrutiny." *Aparicio*, 672 S.W.3d at 715 (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Casarez v. State*, 913 S.W.2d 468, 493 (Tex. Crim. App. 1995) (op. on reh'g)). To satisfy intermediate scrutiny, the State must show "that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (quoting *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980)). Under intermediate scrutiny, the State must provide an "exceedingly persuasive justification" for its classification. *United States v. Virginia*, 518 U.S. 515, 533 (1996). "The burden of justification is demanding and it rests entirely on the State." *Id*. This test requires a "genuine" justification, not one that is "hypothesized or invented *post hoc* in response to litigation." *Id*.

In *Gomez*, 2023 WL 7552682, at *6, we addressed whether the State had met its burden under intermediate scrutiny. We noted that the State pointed only to the Governor's Proclamation and the lack of pretrial facilities to hold women. *Id*. We emphasized that the State had not provided an "explanation of how its policy of arresting men for criminal trespass, and not similarly situated women, [was] substantially related to its important governmental interest of border security." *Id*. We explained that "[w]hile the State point[ed] to the lack of facilities to hold women pretrial, once again, it [did] not present[] any evidence of why it is not possible to modify and/or build temporary facilities to hold women, as it did for men." *Id*. Thus, we held that the State had not met its burden under intermediate scrutiny to justify its actions. *Id*.

Similarly, in this case, the State relies on the Governor's Proclamation and the stipulation of the parties that women require separate housing from adult male detainees. However, as in *Gomez*, even though given an opportunity, the State failed to present any evidence regarding the feasibility of the State to bear the financial burden of arresting, housing, and prosecuting women,

- 12 -

as it did by modifying its existing facilities to house male detainees. *See id*. There is simply no evidence in this record to support the State's assertion that its discriminatory conduct is substantially related to its important governmental interest of border security. *See id*.; *see also Adams v. Sch. Bd. of St. Johns City*, 57 F.4th 791, 801 (11th Cir. 2022) ("For a policy to be substantially related to an important governmental objective, there must be 'enough of a fit between the . . . [policy] and its asserted justification.'" (quoting *Danskine v. Miami Dade Fire Dep't*, 253 F.3d 1288, 1299 (11th Cir. 2001)) (alteration in original). Thus, even in reviewing the facts in the light most favorable to the trial court's ruling, we hold the trial court abused its discretion in denying Vazquez relief on his federal equal protection selective prosecution claim. *See Perusquia*, 336 S.W.3d at 274-75 (stating appellate standard in reviewing habeas rulings).

## CONCLUSION

Because Vazquez's state and federal selective prosecution claims on the basis of sex discrimination are cognizable and because Vazquez presented a prima facie claim of selective prosecution, the burden shifted to the State to justify its discriminatory conduct under strict scrutiny (Vazquez's state claim) and intermediate scrutiny (Vazquez's federal claim). However, under strict scrutiny, the State failed to present any evidence that its discriminatory conduct was *narrowly tailored* to serve its compelling interest of border security. Similarly, under intermediate scrutiny, the State failed to present any evidence that its discriminatory conduct *was substantially related* to its important governmental interest of border security. Because there is no evidence to support the State's conduct being either "narrowly tailored" or "substantially related" to its interest of border security, even in viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court abused its discretion in denying Vazquez's requested relief. In his brief, Vazquez requests his bail be discharged, the trial court's order be reversed, and this cause be remanded for the lower court to dismiss the information with prejudice. *See Ex parte*

*Perry*, 483 S.W.3d 884, 917-18 (Tex. Crim. App. 2016) (concluding that the trial court should have granted habeas relief, and reversing and remanding the cause to the trial court with instructions to dismiss the indictment); *Ex parte Lo*, 424 S.W.3d 10, 27 (Tex. Crim. App. 2013) (holding that relief should have been granted in pretrial habeas proceeding, and reversing and remanding for trial court to dismiss indictment); *Ex parte Alvear*, 524 S.W.3d 261, 266 (Tex. Crim. App. 2016) (holding that relief should have been granted in pretrial habeas proceeding because information shows on its face that prosecution is barred by the statute of limitations, and reversing and dismissing the information and prosecution); *see also* TEX. CODE CRIM. PROC. art. 11.40 (providing for the "judge or court before whom a person is brought by writ of habeas corpus" to discharge applicant "if no legal cause be shown for the imprisonment or restraint"). Vazquez requests the information be dismissed with prejudice as his prosecution violates the state and federal constitutions. *See Ex parte Aparicio*, 672 S.W.3d at 711 (explaining that if applicant's "selective-prosecution claim on the basis of equal protection has merit, any conviction resulting from a trial would be void, and he would be entitled to release"); *see also In re Aiken Cnty.*, 725 F.3d 255, 264 n.7 (D.C. Cir. 2013) ("If the Executive selectively prosecutes someone based on impermissible considerations, the equal protection remedy is to dismiss the prosecution[.]") (Kavanaugh, J.). Therefore, we reverse the trial court's order and remand this cause to the trial court with instructions to discharge Vazquez from bail and dismiss the information in the underlying proceeding with prejudice.

Patricia O. Alvarez, Justice

PUBLISH