

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-23-00285-CR |
| EX PARTE: | § | Appeal from the |
| WILMER RAMOS-MORALES, | § | County Court |
| Appellant. | § | of Kinney County, Texas |
| | § | (TC# 10843CR) |

## **O P I N I O N**

Appellant Wilmer Ramos-Morales (Ramos-Morales) is a noncitizen who was arrested under Operation Lone Star (OLS) and charged with the misdemeanor offense of criminal trespass. Following his arrest, Ramos-Morales filed an application for a pretrial writ of habeas corpus in which he requested the issuance of a habeas writ, an evidentiary hearing, and a dismissal of the underlying charge, contending he was the subject of selective prosecution in violation of state and federal constitutional equal protection principles. Without issuing a writ or holding a hearing, the trial court denied his habeas application. Shortly thereafter, the Fourth Court of Appeals addressed the constitutionality of the State's OLS policy in *Ex parte Aparicio*, 672 S.W.3d 696, 701 (Tex. App.—San Antonio 2023, pet. granted). Ramos-Morales then filed a second application for a pretrial writ of habeas corpus, again seeking dismissal of the charge against him on the same basis as his first application. This time, the trial court denied his application on the merits, and

1

Ramos-Morales appealed, contending the trial court erred in not granting his requested relief.[1] Based on the reasoning below, we reverse and remand to the trial court with instructions to enter an order dismissing Ramos-Morales's criminal case with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Ramos-Morales's arrest and his first request for habeas relief

On March 6, 2021, Governor Greg Abbott directed the Texas Department of Public Safety to initiate OLS "to deter[] illegal border crossing and . . . prevent criminal activity along the border." *Ex parte Aparicio*, 672 S.W.3d at 701. As part of OLS, Ramos-Morales, a noncitizen, was arrested for criminal trespass in Kinney County on September 29, 2021. On March 9, 2023, he filed an application for a pretrial writ of habeas corpus seeking dismissal of the criminal charge, arguing his rights had been violated under the United States Constitution's Equal Protection Clause and the Texas Constitution's Equal Rights Amendment, as the State was selectively prosecuting men, and not similarly situated women, for criminal trespass as part of OLS. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 3a. Ramos-Morales attached several exhibits supporting his claim that the State had a policy of arresting only male noncitizens for criminal trespass while referring similarly situated female noncitizens to Border Patrol. Among the exhibits was a Notice of Stipulation the State filed in another OLS case in which it stipulated: "women are not prosecuted for trespass as part of Operation Lone Star, even when they are found trespassing." The State did not file a response to the application.

---

[1] The appeal was transferred from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

On March 28, 2023, the trial court denied Ramos-Morales's application, using a form order stating that it was denying the application without issuing the writ. Ramos-Morales did not appeal from that order.

### B. *Aparicio* and its progeny

Less than three months later, on June 21, 2023, the Fourth Court of Appeals issued *Ex parte Aparicio*, 672 S.W.3d 696. In that case, a noncitizen (Aparicio), who had been arrested for criminal trespass in Maverick County as part of OLS, filed a similar application for a pretrial writ of habeas corpus seeking dismissal of the charge against him, making an identical claim that the State was selectively prosecuting men under OLS in violation of his constitutional rights. *Id.* at 701. Unlike the present case, however, the trial court in *Aparicio* issued the writ and held a full evidentiary hearing on the question of whether the State was engaging in selective prosecution. *Id.* at 701–06. The trial court denied the writ on the merits despite undisputed evidence that the State was criminally prosecuting only male noncitizens for trespass under OLS, finding that Aparicio's equal protection argument failed because the State could prosecute women if it "chose to."[2] *Id.* at 706.

The Fourth Court of Appeals disagreed, finding Aparicio met his initial burden of establishing a prima facie case of selective prosecution, i.e., that "the prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* at 715. The burden then shifted to the State "to justify the discriminatory treatment." *Id.* at 715 (citing *Ex parte Quintana*, 346 S.W.3d 681, 685 (Tex. App.—El Paso 2009, pet. ref'd)). Aparicio's federal equal protection claim was subject to intermediate scrutiny; namely, the State had to demonstrate that its "discriminatory classification is substantially related to an important governmental interest." *Id.* at

---

[2] In particular, the trial court heard evidence that "as part of OLS, 4,076 people had been arrested for misdemeanor offenses and not a single individual arrested was a woman." *Ex parte Aparicio*, 672 S.W.3d 696, 714 (Tex. App.—San Antonio 2023, pet. granted).

708 (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Casarez v. State*, 913 S.W.2d 468, 493 (Tex. Crim. App. 1994) (en banc) (op. on reh'g)). And Aparicio's state-based equal rights claim was subject to strict scrutiny; namely, the State had to demonstrate that its actions were "narrowly tailored to serve a compelling governmental interest." *Id*. at 716 (citing *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012)).

On appeal, the State argued "'the emergency situation on Texas's southern border' justifies its discriminatory actions." *Id.* at 716. However, the court of appeals noted that the trial court never reached the merits of that issue, as it determined Aparicio had not met his burden of establishing a prima facie case of selective prosecution on the basis of sex. *Id.* The court therefore reversed the trial court's denial of Aparicio's application for a writ of habeas corpus and remanded the matter to the trial court to "determine whether the State's discriminatory classification was justified" under both constitutional claims.[3] *Id.*

The Fourth Court of Appeals has since decided several cases involving OLS prosecutions of men. Recently, the court issued *State v. Gomez*, No. 04-22-00872-CR, 2023 WL 7552682 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.) (not designated for publication) involving a similar claim of selective prosecution on the basis of sex made in an application for a pretrial writ of habeas corpus by another male noncitizen (Gomez) who had been arrested in Kinney County for criminal trespass as part of OLS. In that case, the trial court issued the writ, held an evidentiary hearing, then granted the writ. *Id.* at *1. The State appealed, conceding it had only arrested males at the border under OLS, but arguing its discriminatory actions were justified based on: "(1) Governor Abbott's Proclamation declaring an emergency regarding border security; and (2)

---

[3] The State filed a petition for discretionary review of the Fourth Court of Appeals' decision, which is currently pending. In the petition, the State argues the court erroneously concluded that Aparicio's claim was cognizable in a pretrial writ of habeas corpus.

testimony that the counties implementing OLS do not have sufficient facilities to hold women detainees."[4] *Id*. at *5. The Fourth Court of Appeals rejected the State's argument, finding that although security at the border may be considered a compelling interest, the State did not demonstrate its actions were narrowly tailored to serve that interest. *Id.* The court noted OLS was a multi-billion-dollar operation, and the State did not explain why it could not have allocated funds for a facility to hold women. *Id.* The court therefore held that the trial court did not abuse its discretion in "concluding the State failed in its burden of justifying its discriminatory conduct under strict scrutiny, as required by Texas's Equal Rights Amendment," and it affirmed the decision to grant the applicant his requested relief and dismiss his criminal case.[5] *Id.*

### C. Ramos-Morales's second request for habeas relief

Following the Fourth Court of Appeals' opinion in *Aparicio*, Ramos-Morales filed a second application for a pretrial writ of habeas corpus, again relying on several exhibits to support his claim that the State had engaged in selective prosecution by only arresting males who were found trespassing at the border. In his application, however, Ramos-Morales expressed his belief that almost a year and half after his arrest, "Kinney County has attempted to cure its unconstitutional OLS Criminal Trespass policy to selectively prosecute men for criminal trespass." In particular, he stated that he was aware of reports that "on February 27, 2023 . . . two woman [sic] were arrested and magistrated for Criminal Trespass in Kinney County." He argued, however, that "[w]hile this

---

[4] At the evidentiary hearing, Captain Joel Betancourt, who oversees the district in which participating OLS counties are located, testified that women were "always sent to immigration" because there was no "place to put them," as "the local county jails have no capacity." *State v. Gomez*, No. 04-22-00872-CR, 2023 WL 7552682, at *2 (Tex. App.—San Antonio Nov. 15, 2023, no pet. h.) (not designated for publication).

[5] The Fourth Court of Appeals has reached the same decision in other cases. *See, e.g.*, *State v. Rodriguez Rodas*, No. 04-22-00885-CR, 2023 WL 8103194, at *2 (Tex. App.—San Antonio Nov. 22, 2023, no pet. h.) (mem. op., not designated for publication); *State v. Garcia Compean*, No. 04-22-00886-CR, 2023 WL 8104870, at *2 (Tex. App.—San Antonio Nov. 22, 2023, no pet. h.) (mem. op., not designated for publication).

policy change may arguably cure future unconstitutional discrimination, Kinney County has already treated [him] differently from 'similarly situated' women at the time of his arrest," and therefore, any such policy change did not cure the constitutional violation in his case.

Relying on *Aparicio*, Ramos-Morales then argued that the State's policy of selectively prosecuting only men—as it existed at the time of his arrest—violated his equal protection rights, as it had both a discriminatory intent and a discriminatory effect. He further argued that the State could not meet its burden of justifying its discriminatory conduct, pointing out the State's claim that it only prosecuted men due to financial constraints—as it asserted in other OLS cases—was deemed insufficient to meet this burden. The State did not file a response to Ramos-Morales's second application.

On September 21, 2023, the trial court denied Ramos-Morales's application, using a form order similar to the one it used to deny his first application, but adding: "[U]pon review of the Application allegations and the Court taking Judicial Knowledge of the filings in this cause, the application for Writ to bring the defendant to the Court is denied without further hearing and requested relief is denied." This appeal followed.

### D. The issues before us

In this case, the State does not deny Ramos-Morales was the subject of selective prosecution, nor does it attempt to justify its discriminatory actions. The State's only argument on appeal is that the trial court lacked jurisdiction to hear Ramos-Morales's application, contending that a claim of selective prosecution is not cognizable in a pretrial writ of habeas corpus. As explained below, we reject that argument in light of *Aparicio* and turn to the question of whether we have jurisdiction to hear Ramos-Morales's appeal, and if so, how we resolve the merits of his appeal.

6

## RAMOS-MORALES'S CLAIMS ARE COGNIZABLE IN A PRETRIAL WRIT OF HABEAS CORPUS

We start with the State's argument that Ramos-Morales's claim of selective prosecution is not cognizable in a pretrial writ of habeas corpus. The State argues "[n]ot only is there no legal authority supporting the ruling, to grant such claims cognizability would cause cascading problems for Texas' Courts." The State acknowledges, however, that the Fourth Court of Appeals rejected the same argument in *Aparicio*. And the State offers no new authority; it simply contends *Aparicio* was wrongly decided, and we should resolve the issue differently. We disagree on both fronts and follow the on-point precedent of the Fourth Court of Appeals. *See* TEX. R. APP. P. 41.3 (a transferee court must follow the precedent of the transferor court to the extent it conflicts with its own; in the opinion, the deciding court may indicate "whether the outcome would have been different" had it "not been required to decide the case in accordance with the transferor court's precedent"); *see also Brazos Elec. Power Coop., Inc. v. Texas Comm'n on Env't Quality*, 576 S.W.3d 374, 382–83 n.6 (Tex. 2019) (an opinion issued by a transferor court remains binding precedent even though the case is pending on rehearing).

Accordingly, we conclude that Ramos-Morales's claim of selective prosecution is cognizable in a pretrial writ of habeas corpus.

## THE TRIAL COURT'S ORDER IS APPEALABLE

We must next consider whether Ramos-Morales has a right to appeal the trial court's order denying his application for a writ of habeas corpus. We conclude he does.

Whether a trial court's order denying an application for a writ of habeas corpus is appealable depends on whether the trial court ruled on the merits of the claim. An order denying an application for a writ of habeas corpus is only appealable when the trial court either grants or denies the relief requested in the application on its merits. *See Ex parte Villanueva*, 252 S.W.3d

7

391, 394 (Tex. Crim. App. 2008) (recognizing that except as provided by statute, only when "there is a ruling on the merits of the claims may a losing party appeal" from the denial of a writ of habeas corpus); *see also In re Perez*, No. 04-23-00294-CR, 2023 WL 5270488, at *2 (Tex. App.—San Antonio Aug. 16, 2023, no pet.) (mem. op., not designated for publication) (per curiam) (recognizing that an appeal is the proper remedy when a trial court denies an application for a writ of habeas corpus on the merits) (citing *Ex parte Sifuentes*, 639 S.W.3d 842, 846 (Tex. App.—San Antonio 2022, pet. ref'd) ("If the record shows that the trial court heard evidence and addressed the merits, the result is appealable.")).

In making a merits-based decision on an application for a writ of habeas corpus, a trial court generally issues the writ then considers evidence to determine whether it has merit and whether the requested relief should be granted. *See State v. Lara*, 924 S.W.2d 198, 203 (Tex. App.—Corpus Christi 1996, no pet.) (citing *Ex parte Noe*, 646 S.W.2d 230, 231 (Tex. Crim. App. 1983)); *see also* TEX. CODE CRIM. PROC. ANN. art. 11.01 ("The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.").[6] Despite the usual process, with limited exceptions in cases challenging placement on community supervision, a court is not required to formally issue a writ or hold a hearing before making a merits-based decision on an application for a writ of habeas corpus, which is appealable. *Ex parte Hargett*, 819 S.W.2d 866, 869 (Tex. Crim. App. 1991) (superseded by statute as stated in *Ex parte Villanueva*, 252 S.W.3d at 397) (clarifying that an appellate court has jurisdiction over an appeal of a trial court's denial of

---

[6] An applicant accused of committing a misdemeanor offense who has not been convicted of the offense may apply to the judge of the court in which the charge is pending. TEX. CODE CRIM. PROC. ANN. art. 11.09.

8

an application for writ of habeas corpus regardless of whether the trial court refuses to issue the writ or conduct an evidentiary hearing if the trial court "under[takes] to rule on the merits of the application").[7]

Ramos-Morales argues that in deciding his application, the trial court made a merits-based ruling on his habeas claims, despite not formally issuing the writ or holding an evidentiary hearing, thereby making the trial court's order appealable. We agree.

In determining whether a trial court's order denying an application for a writ of habeas corpus was merits-based, we review not only the order itself, but the "entire record." *In re Martinez-Jimenez*, No. 04-23-00547-CR, 2023 WL 7005866, at *2 (Tex. App.—San Antonio Oct. 25, 2023, no pet. h.) (mem. op., not designated for publication); *see also Nichlos v. State,* 255 S.W.2d 522, 526 (Tex. Crim. App. 1952) (Appealability "is not to be determined alone from the form of the order entered, but the entire record may be looked to"). A key distinction in determining whether a trial court's order is appealable is whether the record reflects that the trial court denied a defendant's writ application because it did not find sufficient cause to *issue the writ*, or whether it reviewed the allegations in the writ and found there was not sufficient cause to *grant the relief requested therein. See Ex parte Martell*, 901 S.W.2d 754, 755 (Tex. App.—San Antonio 1995, no writ) (a court's "determination that there is not even sufficient cause to issue the writ [] must be distinguished from a determination that there is not sufficient cause to grant the relief requested") (citing *Ex parte Hargett,* 819 S.W.2d at 868); *see also Maddox v. State*, No. 08-01-

---

[7] In *Villanueva*, the court recognized that the Texas Legislature enacted Article 11.072 of the Texas Code of Criminal Procedure, which altered the rules governing appellate review of a trial court's order disposing of an application for a writ of habeas corpus challenging an order or judgment of conviction placing a defendant on community supervision. *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008)). The court held that *Hargett's* discussion of the rules governing the appealability of orders disposing of habeas applications no longer applies to appeals from such orders or judgments of conviction to the extent those rules conflict with Article 11.072. *Id.* However, the court did not abrogate the appealability rules expressed in *Hargett* with respect to habeas applications, such as the one here, that are not governed by Article 11.072. *Id.* at 395.

00490-CR, 2002 WL 504971, at *2 (Tex. App.—El Paso Apr. 4, 2002, no pet.) (not designated for publication) (recognizing that if a "trial court rules on the merits of the applicant's claim but denies the requested relief, that is appealable; conversely, if the trial court dismisses the writ application for some other reasons, such as lack of jurisdiction, without reaching the merits, that order is not appealable"); *Ex parte Bowers*, 36 S.W.3d at 927 (recognizing "distinction between the issuance of a writ of habeas corpus and the granting of relief on the claims set forth in an application for that writ").

In the present case, the trial court stated in its order denying Ramos-Morales's second writ application that it had reviewed the "allegations" in the writ application, and that it was taking "Judicial Knowledge of the filings in this cause[.]" The court further stated that it was not only denying Ramos-Morales's request for the issuance of a writ and a hearing, but that it was also denying his "requested relief." We find this language sufficient to demonstrate that the trial court considered the merits of Ramos-Morales's habeas claims and denied his application on its merits, which in turn, makes the denial of his application an appealable order.[8] *See Ex parte Jagneaux*, 315 S.W.3d 155, 156 (Tex. App.—Beaumont 2010, no pet.) (not designated for publication) (order stating that the trial court denied the relief requested in the defendant's application was merits-based and therefore appealable); *see also Ex parte Brooks*, 97 S.W.3d 639, 640 (Tex. App.—Waco 2002, no pet.) (mem. op., not designated for publication) (finding order denying writ application appealable where trial court stated it had reviewed the defendant's claims and found them to be without merit, and the defendant was therefore not entitled to the relief requested); *Ex Parte*

---

[8] We distinguish this case from *Ex parte Garcia*, No. 04-22-00473-CR, 2023 WL 8102426, at *3 (Tex. App.—San Antonio Nov. 22, 2023, no pet. h.) (not designated for publication), in which the Fourth Court of Appeals found that the trial court did not reach the merits of an applicant's habeas claims despite its order finding that the applicant was "not entitled to the relief requested," because the trial court issued the order after holding a hearing solely on the question of whether to issue the writ in the first instance and determining not to do so. *Id*. at *2–3.

10

*Gerardo Reyes Urbina Suarez*, No. 06-23-00214-CR, 2023 WL 8287582, at *1–2 (Tex. App.—Texarkana Dec. 1, 2023, no pet. h.) (mem. op., not designated for publication) (finding trial court's use of similar language in order denying OLS defendant's application for a pretrial writ of habeas corpus to be merits-based, making the order appealable).

Accordingly, we conclude that we have jurisdiction to consider Ramos-Morales's appeal and turn to the merits of his habeas claims.

## STANDARD OF REVIEW

In reviewing the merits of a trial court's decision to grant or deny habeas corpus relief, we defer to the trial court's assessment of the facts when those facts turn on an evaluation of credibility and demeanor. *Gomez*, 2023 WL 7552682, at *4 (citing *Ex parte Perusquia*, 336 S.W.3d 270, 274–75 (Tex. App.—San Antonio 2010, pet. ref'd) (not designated for publication); *Ex parte Quintana*, 346 S.W.3d 681, 684 (Tex. App.—El Paso 2009, pet. ref'd) (not designated for publication)). And we view the facts in the light most favorable to the trial court's ruling and will uphold it absent an abuse of discretion. *Id.*; *see also Ex parte Trevino*, 648 S.W.3d 435, 439 (Tex. App.—San Antonio 2021, no pet.) (not designated for publication) (recognizing that appellate court views the facts in the light most favorable to the trial court's ruling). Reviewing courts must also grant deference to implicit findings of fact that support the trial court's ultimate ruling. *Ex parte Perusquia*, 336 S.W.3d 270, 275 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Ex parte Wheeler*, 203 S.W.3d 317, 324 n.23 (Tex. Crim. App. 2006)). However, "[i]f the resolution of the ultimate question turns on an application of the law, we review the determination de novo." *Id.*; *see also Ex parte Vazquez-Bautista*, No. 04-22-00630-CR, 2023 WL 8440339, at *3 (Tex. App.—San Antonio Dec. 6, 2023, no pet. h.) (not designated for publication) (recognizing same in context of an appeal from a trial court's decision granting an OLS applicant's pretrial petition for a writ of habeas corpus). Here, we are able to resolve the appeal as a matter of law.

11

## WE REVERSE AND REMAND FOR DISMISSAL OF THE CHARGE

The State's judiciary has been inundated with appeals from various trial courts' rulings on applications for pretrial writs of habeas corpus from OLS defendants. And the Fourth Court of Appeals has already determined, as a matter of law, that the State engaged in gender discrimination by only prosecuting males for criminal trespass at the border under OLS at the time Ramos-Morales was arrested. *Ex parte Aparicio*, 672 S.W.3d at 715. There is nothing in the record before us to suggest that the State's discriminatory policy was not in effect at the time Ramos-Morales was arrested. And while the record reflects that the State (or at least Kinney County) may have changed its discriminatory OLS policy in February of 2023—almost a year and a half after Ramos-Morales was arrested—the Fourth Court of Appeals has already recognized, as a matter of law, that any such change has no bearing on a defendant's selective prosecution claim, as the only evidence relevant to an "applicant's selective-prosecution claim is that which existed at the time of the applicant's arrest." *Ex parte Barahona-Gomez*, No. 04-23-00230-CR, 2023 WL 6285324, at *2 (Tex. App.—San Antonio Sept. 27, 2023, no pet. h.).

As explained above, in other similar cases, while the State conceded it had only arrested males for criminal trespass under OLS during the relevant time, it attempted to justify its selective-prosecution policy by pointing to security issues at the border and the lack of facilities to hold women detainees. *See, e.g.*, *Gomez*, 2023 WL 7552682 at *5. In those cases, the Fourth Court of Appeals found that although security at the border may be considered a compelling interest, the State failed to demonstrate that its actions were narrowly tailored to serve that interest, and it therefore affirmed trial court orders granting habeas relief to OLS defendants on selective prosecution claims. *Id.*; *see also State v. Rodriguez Rodas*, No. 04-22-00885-CR, 2023 WL 8103194, at *2 (Tex. App.—San Antonio Nov. 22, 2023, no pet. h.) (mem. op., not designated for publication) (same); *State v. Garcia Compean*, No. 04-22-00886-CR, 2023 WL 8104870, at *2

(Tex. App.—San Antonio Nov. 22, 2023, no pet. h.) (mem. op., not designated for publication) (same).

This appeal presents a fork in the road. One path is to reverse the trial court's denial of Ramos-Morales's habeas application and remand the case to the trial court to hold an evidentiary hearing, make findings of fact and conclusions of law on the relevant issues, or both. Another path is to reverse the trial court's decision and remand to the trial court with instructions to grant the writ and dismiss the misdemeanor criminal trespass charge. To avoid needlessly driving this case from pillar to post at the sacrifice of judicial economy, we choose the latter path.

### REMANDING FOR FURTHER PROCEEDINGS IS UNNECESSARY AND WOULD NOT DO SUBSTANTIAL JUSTICE

The sole purpose of an appeal from a trial court's habeas corpus ruling is to "do substantial justice to the parties," and in resolving such an appeal, we may "render whatever judgment . . . the nature of the case require[s]." TEX. R. APP. P. 31.3 (in habeas appeals, an "appellate court will render whatever judgment and make whatever orders the law and the nature of the case require"); TEX. R. APP. P. 31.2 (in habeas appeals, "the sole purpose of the appeal is to do substantial justice to the parties"); *see also Ex Parte Salazar*, 510 S.W.3d 619, 628 (Tex. App.—El Paso 2016, pet. ref'd) (recognizing appellate court's broad power under Rule 31.3 to render judgment in habeas appeals as the nature of the case requires); *Ex parte Evans*, 410 S.W.3d 481, 483–84 (Tex. App.– Fort Worth 2013, pet. ref'd) (recognizing same); *Ex parte Arjona*, 402 S.W.3d 312, 314 (Tex. App.—Beaumont 2013, no pet.) (not designated for publication) (same); *Ex parte Williams*, No. 05-21-00482-CR, 2021 WL 3941713, at *1 (Tex. App.—Dallas Sept. 2, 2021, no pet.) (mem. op., not designated for publication) ("The sole purpose of the appeal [in habeas cases] is to do substantial justice to the parties.").

13

In reaching the judgment that would best do "substantial justice" to the parties, we turn to the Fourth Court of Appeals' recent opinion in *Ex parte Vazquez-Bautista*. In that case, Vazquez-Bautista brought an application for a pretrial writ of habeas corpus alleging he was the subject of selective prosecution under the State's OLS policy. *Vazquez-Bautista*, 2023 WL 8440339 at *1. Following an evidentiary hearing, the trial court denied his application on the merits without making specific findings of fact, and Vazquez-Bautista appealed. *Id.* In its original opinion, citing *Aparicio*, the Fourth Court of Appeals found Vazquez-Bautista had made a prima facie showing that his equal protection rights had been violated under the OLS policy, as he had presented nearly identical evidence as was presented in *Aparicio*. *Id*. at *4 (citing *Ex parte Vazquez-Bautista*, No. 04-22-00630-CR, 2023 WL 5089004, at *2 (Tex. App.—San Antonio Aug. 9, 2023) (mem. op., not designated for publication)). The court reversed and remanded the matter to the trial court to provide the State an opportunity to attempt to justify its gender discrimination. *Id*.

However, the Fourth Court of Appeals subsequently issued another opinion on en banc reconsideration of its *Vazquez-Bautista* decision wherein, rather than send the case back to the trial court, the court found it proper to make its own determination of whether, based on the record before it, the State met its burden of justifying its actions. *Id.* at *6. The court's decision was prompted in part by the fact that the trial court had given the State the opportunity to address the issue of justification, and the parties briefed the issue before the trial court denied Vazquez-Bautista's habeas application. *Id*. at *5–6. Thus, the Fourth Court of Appeals concluded that, unlike the situation in *Aparicio*, where the trial court addressed only whether the State had engaged in gender discrimination and not whether it was justified in doing so, the trial court in Vazquez-Bautista's case had the opportunity to rule on both prongs of his selective prosecution claim. *Id.* The Fourth Court of Appeals further noted that the State expressly briefed the justification prong in its appellate briefing and made identical arguments to the arguments it made in *Gomez*, seeking

14

to justify its gender discrimination based on the "emergency situation" at the border. *Id.* (citing *Gomez*, 2023 WL 7552682 at \*5). And, as in *Gomez*, the State in its briefing did not present any argument to support a finding that its discriminatory actions were narrowly tailored to serve that interest, or in other words, why the State could not have directed funds to enable it to prosecute both men and women for criminal trespass at the border. *Id.* Accordingly, the Fourth Court of Appeals found the State failed to meet its burden of justifying its actions, and the trial court therefore abused its discretion in denying Vazquez-Bautista his requested habeas relief. *Id.* The court found that the proper disposition of the appeal was to reverse the trial court's order and remand the matter to the trial court with instructions to discharge Vazquez-Bautista from bail and dismiss the information in the underlying proceeding with prejudice. *Id*. at \*6 (citing *Aparicio*, 672 S.W.3d at 711 (explaining that if applicant's "selective-prosecution claim on the basis of equal protection has merit, any conviction resulting from a trial would be void, and he would be entitled to release"); *In re Aiken Cnty*., 725 F.3d 255, 264 n.7 (D.C. Cir. 2013) ("If the Executive selectively prosecutes someone based on impermissible considerations, the equal protection remedy is to dismiss the prosecution[.]") (Kavanaugh, J.)).

We recognize that, unlike the situation in *Vazquez-Bautista*, the trial court in Ramos-Morales's case did not hold an evidentiary hearing or request briefing on the issue of whether the State could justify its actions. And in at least one instance, the Fourth Court of Appeals has reversed a trial court's decision to deny an OLS applicant's writ of habeas corpus when it failed to hold an evidentiary hearing, and remanded the matter to the trial court with instructions to do so. *See Ex parte Barahona-Gomez*, 2023 WL 6285324 at \*3 (remanding for an evidentiary hearing and to allow the trial court to make specific findings of fact and conclusions of law on OLS applicant's habeas claims). However, there is an important distinction between the present case and the situation in *Barahona-Gomez*. In *Barahona-Gomez*, as in *Vazquez-Bautista*, the State

15

expressly addressed the merits of the applicant's habeas claims in its appellate briefing, denying that it had engaged in gender discrimination, and arguing that even if it did, it was justified in doing so.[9]

In contrast, here the State in its appellate briefing does not argue or even address the merits of Ramos-Morales's habeas claims and makes no attempt to counter his claim that the State had a policy of gender discrimination or that its policy was not justified. Nor does the State request on appeal that it be given the opportunity to address the merits of Ramos-Morales's claims on remand. Instead, the State only argues that Ramos-Morales's habeas claims were not cognizable in a pretrial writ application—an argument we have already rejected. And in its prayer for relief, the State requests that we affirm the trial court's order solely on that basis.

We recognize that in general, an appellee is not required to address every point raised by an appellant, and in fact it need not file an appellee's brief at all, as it is the appellant who must shoulder the burden of establishing grounds for reversal. *See generally Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 479 n.6 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Sullivan v. Booker*, 877 S.W.2d 370, 373 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). However, the Texas Rules of Appellate Procedure provide that an appellee's brief, when filed, must conform in most respects to the rules governing an appellant's brief, including

---

[9] This was also the situation in *Ex Parte Antonio-Santiago*, where the trial court denied an OLS applicant's writ of habeas corpus following an evidentiary hearing. *Ex parte Antonio-Santiago*, No. 04-22-00628-CR, 2023 WL 5603201 (Tex. App.—San Antonio Aug. 30, 2023, no pet.) (mem. op., not designated for publication). In that case, the Fourth Court of Appeals remanded to the trial court for further proceedings to allow the trial court to make findings of fact and conclusions of law on the merits of the applicant's habeas claims but did so *after the State addressed the merits of those claims in its appellate briefing. Id.* at *3. As well, in both *Antonio-Santiago* and *Barahona-Gomez,* the trial courts denied the OLS defendants' writ applications before the Fourth Court of Appeals issued its opinion in *Aparicio*, and those courts therefore did not have the benefit of the opinion in rendering their decisions. *Id.* at *1 (trial court held two evidentiary hearings, one in August 2022 and the second in September 2022); *Ex parte Barahona-Gomez*, No. 04-23-00230-CR, 2023 WL 6285324, at *1 (Tex. App.—San Antonio Sept. 27, 2023, no pet. h.) (mem. op., not designated for publication) (trial court issued its decision on March 8, 2023). Here, however, Ramos-Morales expressly brought the *Aparicio* opinion to the trial court's attention in his second writ application, which is the subject of this appeal.

the requirement of a "prayer" that "contain[s] a short conclusion that clearly states the nature of the relief sought." *See* TEX. R. APP. P. 38.1(j) (setting forth rules for appellant's brief); 38.2(a) (providing that, with exceptions not relevant here, an appellee's brief "must conform to the requirements of Rule 38.1"). Here, the State has neither requested that we remand the matter to the trial court for further proceedings nor has it provided us with any reason why a remand is necessary. And we do not believe that it is.

Rule 43.3 provides that when reversing a trial court's judgment, an appellate court "must render the judgment that the trial court should have rendered except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial." TEX. R. APP. P. 43.3 (a), (b). And it is proper for an appellate court to remand for further proceedings when the record before it is not fully developed. *See, e.g.*, *Jackson v. Hall*, 214 S.W.2d 458, 459 (Tex. 1948) ("[i]t is the general rule" that "when it does not appear that the facts have been fully developed, the judgement of the appellate court should be one of remand and not one of rendition"); *Ex Parte Garcia*, No. 13-14-00501-CR, 2016 WL 454997, at *3 (Tex. App.—Corpus Christi Feb. 4, 2016, no pet.) (mem. op., not designated for publication) (remanding to allow the trial court to hear evidence on the question of whether a plea was voluntarily entered where record was not fully developed); *Ex parte August*, 552 S.W.2d 169, 170 (Tex. Crim. App. 1977) (remanding to trial court for an evidentiary hearing to consider defendant's habeas claim that the amount of bail set was unreasonable). Moreover, to fail to remand when the record is not fully developed would not "do substantial justice to the parties" as required by Rule 31.2 of the Texas Rules of Appellate Procedure.

But as set forth above, the *Aparicio* opinion made it clear that the State was engaging in gender discrimination under OLS at the time Ramos-Morales was arrested, and the trial court had the benefit of that opinion in rendering its decision. And the Fourth Court of Appeals has since

17

held, in a variety of other OLS cases, that the State did not meet its burden of presenting sufficient evidence to justify its gender discrimination. *See, e.g.*, *Gomez*, 2023 WL 7552682. Here, the State has not presented merits arguments on appeal; it has not and does not suggest it has any additional evidence to submit, or any additional arguments to make, to justify its gender discrimination in Ramos-Morales's case.

We therefore conclude that a remand for further proceedings to develop the record or allow the trial court to make specific findings of fact and conclusions of law is neither necessary under these circumstances, nor would it do the parties substantial justice. Moreover, it would not be in the interest of judicial economy to do so; to the contrary, it would be an exercise in futility to remand for further proceedings, where neither the law nor the facts are in dispute. *See N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 479–80 (5th Cir. 2018) (where facts and law were well-settled, court recognized that it would be an "exercise in futility" and "diminish judicial economy" to remand to the trial court for further proceedings, where there was a "high likelihood" that the same issue would return to the court in a subsequent appeal, thereby further prolonging the litigation unnecessarily); *see also Aetna Life Ins. Co. v. Behar*, No. H-15-491, 2019 WL 4195355, at \*6 (S.D. Tex. Aug. 5, 2019), report and recommendation adopted, No. H-15-0491, 2019 WL 4194024 (S.D. Tex. Sept. 4, 2019) (holding same); *Conn v. Rhodes*, No. 2-08-420-CV, 2009 WL 2579577, at \*4 (Tex. App.—Fort Worth Aug. 20, 2009, no pet.) (mem. op., not designated for publication) (where father testified that he did not intend to exercise his visitation rights, court found that it would be "a meaningless exercise in futility" to remand to the trial court to reconsider nature of the parties' visitation schedule).

Finally, we note that remanding to the trial court to hold an evidentiary hearing or otherwise reconsider its decision would unnecessarily cause further delays in resolving Ramos-Morales's habeas claims, which cuts against the principle that habeas proceedings should be handled in an

expedited manner. *See generally Ex parte Johnson*, 876 S.W.2d 340, 343 (Tex. Crim. App. 1994) (finding it appropriate to issue a writ of habeas corpus, without remanding to the trial court, by utilizing its habeas corpus jurisdiction and power to "expedite a fair resolution of the unconstitutional situation the courts below have created for this applicant"); *see also* TEX. R. APP. P. 31.2 (b) (providing that an appeal in a habeas corpus proceeding other than one challenging a defendant's conviction or placement on community supervision, "shall be submitted and heard at the earliest practicable time").

## CONCLUSION

The trial court erred, as a matter of law, in denying Ramos-Morales's application for a pretrial writ of habeas corpus on the merits. Accordingly, we reverse the trial court's order and remand to the trial court to grant the writ and dismiss with prejudice the misdemeanor criminal trespass charge against Ramos-Morales.

LISA J. SOTO, Justice

December 20, 2023

Before, Palafox, and Soto, JJ., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.), sitting by assignment

19